**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Betty Jane Soliz, | No. CV-18-01981-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Betty Jane Soliz seeks review under 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security ("Commissioner"), which denied her application for disability benefits. For the following reasons, the Court finds that the administrative law judge's ("ALJ") decision was based on reversible legal error and remands for further proceedings.

Soliz is a 55-year-old female who previously worked as a correction officer, warehouse worker, and document technician. In January 2012, Soliz filed an application for disability benefits, alleging a disability onset date in December 2011. (A.R. 325-326.) The claim was denied initially on July 3, 2012 (A.R. 177) and again upon reconsideration on June 7, 2013 (A.R. 199). Soliz then filed a written request for hearing on July 5, 2013. (A.R. 239-240.) On June 10, 2014 and June 17, 2014, she appeared and testified at a hearing at which an impartial vocational expert also appeared and testified. (A.R. 42-120.) On September 5, 2014, the ALJ issued a decision concluding Soliz wasn't disabled within the meaning of the Social Security Act. (A.R. 200-221.) Soliz requested the Appeals

Council review the decision, and on March 23, 2016, the Appeals Council granted her request and remanded the case to the ALJ. (A.R. 222-227.) The ALJ conducted a new hearing on December 15, 2016 (A.R. 121-159) and issued a decision again determining Soliz wasn't disabled (A.R. 14-38). Soliz requested review of the ALJ's decision, but the Appeals Council denied review on May 16, 2018. (A.R. 1-6.) At that point, the ALJ's decision became the Commissioner's final decision.

**LEGAL STANDARD**

The Court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). The Court should uphold the ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* Put another way, "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court should uphold the ALJ's decision "[w]here evidence is susceptible to more than one rational interpretation," but the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citations and internal quotation marks omitted).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id.* (citations and internal quotation marks omitted). The Court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* Importantly, however, the Court may not uphold an ALJ's decision on a ground not actually relied on by the ALJ. *Id.* at 1121.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the

burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, which addresses whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled.

## BACKGROUND

At step one, the ALJ determined that Soliz met the insured status requirements of the Social Security Act through September 30, 2017 and had not engaged in substantial gainful activity since December 16, 2011. (A.R. 19.) At step two, the ALJ found that Soliz had the following severe impairments: status post lap band procedure, opiate dependence, hypertension, diverticulitis, fibromyalgia, opioid induced mood disorder, obesity, lumbar degenerative disc disease, scoliosis, spondylosis, stenosis, cervical spondylosis, and right medial epicondylitis status post right knee arthroscopy. (A.R. 20.) At step three, the ALJ determined that Soliz didn't have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (A.R. 20-22.) At step four, the ALJ determined that Soliz had the RFC to perform light work, except that she couldn't

have any exposure to hazards, such as moving machinery or unprotected heights, she couldn't have any public contact, and she could only have occasional contact with coworkers and supervisors. (A.R. 22-28.) The ALJ found Soliz wasn't capable of performing her past relevant work but could perform the occupations of cleaner/housekeeper, small parts assembler, and garment handler. (A.R. 28-29.)

In her opening brief, Soliz argues the ALJ erred by failing to: (1) provide reasons for rejecting the opinions of the state agency medical consultants; (2) consider whether carpal tunnel syndrome was a severe impairment and/or include carpal tunnel syndrome-related limitations in her RFC; and (3) adequately explain how she concluded Soliz could perform light work. Soliz asks the Court to remand for reconsideration. (Doc. 12.)

For the reasons that follow, the Court agrees the ALJ committed reversible legal error when considering Soliz's limitations caused by carpal tunnel syndrome and when determining Soliz could perform light work. The Court also acknowledges the ALJ committed error when rejecting the State agency medical consultants' opinions, but this error was harmless.

## DISCUSSION

I. <u>Whether The ALJ Committed Reversible Error By Rejecting The State Agency Medical Consultants' Opinions</u>

Soliz argues the ALJ erred by failing to give reasons for rejecting the opinions of two state agency medical consultants. (Doc. 12 at 10.) First, Mary Downs, Ph.D, opined that Soliz can carry out simple instructions, sustain a routine, and make simple work-related decisions. (A.R. 174.) Dr. Downs also determined Soliz would have difficulty dealing with workplace changes and Soliz would do better in a job in which tasks were static and changes could be explained. (*Id.*) Next, Stephen Fair, Ph.D, determined Soliz could perform simple, unskilled work. (A.R. 196.)[1]

"[A]dministrative law judges must consider findings of State agency medical and

---

[1] Soliz, in her brief, ascribes this medical opinion to L.A. Woodard, D.O. But Dr. Woodard opined on Soliz's *physical* limitations. (A.R. 192-194.) The Court assumes Soliz intended to assign error to the ALJ's failure to consider Dr. Fair's opinion.

psychological consultants . . . as opinion evidence . . . ." *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1136 (C.D. Cal. 2009) (citation omitted). This means that ALJs "may not ignore these opinions and must explain the weight given to the opinions in their decisions." S.S.R. 96–6p, 1996 WL 374180, *2 (S.S.A.).

Here, the ALJ acknowledged the opinions of the state agency medical consultants only at step three: "[T]he undersigned notes that no State agency psychological consultant concluded that mental listing is medically equaled." (A.R. 22.) However, the ALJ didn't discuss (much less reject) the mental limitations expressed by Dr. Downs and Dr. Fair when determining Soliz's RFC. This was a potentially significant omission because both doctors appeared to opine that Soliz can only perform simple, unskilled work, yet the ALJ didn't expressly incorporate such a limitation into the RFC. ("Light work" isn't necessarily the same thing as "simple, unskilled work.") This was error. To the extent the ALJ may have disagreed with those opinions, the ALJ was required to explain why. In the Social Security context, disagreement can't permissibly be inferred from silence.

Nevertheless, an error can't provide an independent reason to remand unless the error was harmful. *Molina*, 674 F.3d at 1115 ("[H]armless error principles apply in the Social Security Act context."). And Soliz acknowledges that, "[a]s the ALJ's decision stands, failure to consider these opinions is harmless because . . . the jobs described by the ALJ were simple, unskilled jobs." (Doc. 12 at 11.) Therefore, the ALJ's failure to consider the limitations expressed by Dr. Downs and Dr. Fair, although erroneous, doesn't provide a basis for remand.

II. <u>Whether The ALJ's Consideration of Soliz's Carpal Tunnel Syndrome Was Reversible Error</u>

A. **The ALJ's Decision**

The ALJ's discussion of Soliz's carpal tunnel syndrome is sparse. At step two, the ALJ omitted carpal tunnel syndrome from the list of "severe" impairments without any mention of the ailment. (A.R. 20.) At step four, the ALJ acknowledged that Soliz claimed "she had numbness in her hands." (A.R. 25.) The ALJ also recognized that an "EMG

[Electromyogram test] showed bilateral median neuropathy at or distal to the wrist (as in carpal tunnel syndrome), moderate in degree electrically on left and mild on the right side." (*Id.*, citing A.R. 1307.) Despite these acknowledgments, the ALJ didn't include any limitations from Soliz's carpal tunnel syndrome in the RFC, finding instead "[t]he claimant's course of treatment . . . in combination with the object[ive] records are not consistent [with] extreme limitations as asserted by the claimant." (A.R. 25.)

B. **The Parties' Arguments**

Soliz argues the ALJ erred in two ways with regard to evaluating her symptoms from carpal tunnel syndrome. First, Soliz contends the ALJ should have determined that her carpal tunnel syndrome was a "severe impairment" at step two. (Doc. 12 at 11-13.) Second, Soliz asserts the ALJ didn't properly consider her limitations from carpal tunnel syndrome and should have included those limitations in her RFC. (*Id.*)

The Commissioner responds that any error in step two is harmless because "the ALJ decided step two in Plaintiff's favor." (Doc. 14 at 3.) The Commissioner doesn't address Soliz's other argument concerning the ALJ's alleged failure to include her limitations from carpal tunnel syndrome in the RFC.

C. **Whether The ALJ Erred By Not Determining Carpal Tunnel Syndrome To Be A "Severe" Impairment**

Ninth Circuit law is not a model of clarity concerning how to evaluate claims of step-two error. Some cases suggest that, although it is error for an ALJ to fail to characterize a particular impairment as "severe" during step two, the error can be disregarded as harmless if the ALJ properly addresses the impairment during later steps. *See, e.g., Lewis v. Astrue*, 498 F. 3d 909, 911 (9th Cir. 2007) ("Even assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless. . . . The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("[T]he ALJ did not find that Burch's obesity was a 'severe' impairment. . . . Assuming without deciding that this omission

constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor."). Other decisions suggest that a claimant can't complain about an ALJ's failure to identify a particular impairment as "severe" during step two so long as the ALJ determined the claimant also had other impairments that so qualify. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("Buck misunderstands the purpose of step two in the analysis. Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. . . . Moreover, step two was decided in Buck's favor after both hearings. He could not possibly have been prejudiced.") (citation omitted).

Given these difficult-to-reconcile precedents, the Court declines to definitively resolve whether the ALJ "erred" during step two by failing to characterize Soliz's carpal tunnel syndrome as a severe impairment. The key issue is whether the ALJ properly evaluated the evidence and testimony concerning that condition during later steps and factored that condition into the RFC.

### D. **Whether The ALJ Erred When Considering Carpal Tunnel Syndrome At Step Four**

At step four, the ALJ acknowledged that Soliz complained of "numbness in her hands" caused by carpal tunnel syndrome. (A.R. 25.) The ALJ seems to have implicitly rejected this symptom testimony by failing to include any limitations in Soliz's RFC related to her hand-numbness.

*1. Legal Standard*

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112 (citation omitted). "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations and internal quotation marks omitted). Here, the ALJ determined Soliz satisfied this first step, noting that Soliz's EMG showed

"median neuropathy at or distal to the wrist (as in carpal tunnel syndrome)." (A.R. 25. *See also* A.R. 23 ["[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms . . . ."].)

If the first step is satisfied, and "there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112 (citations and internal quotation marks omitted). Here, the ALJ didn't find evidence of malingering, so she was required to provide specific, clear and convincing reasons to reject Soliz's allegation that carpal tunnel syndrome caused numbness in her hands.

To satisfy the "specific, clear and convincing" standard, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). "General findings are insufficient," *Burrell*, 775 F.3d at 1138, and "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible," *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

*2. Analysis*

Here, the ALJ's reasons for rejecting Soliz's symptom testimony about the numbness in her hands aren't specific, clear or convincing. The first reason provided by the ALJ for rejecting Soliz's overall symptom testimony was that her "course of treatment" wasn't consistent with her alleged limitations. (A.R. 25.) But it's unclear why Soliz's course of treatment could be said to undermine her allegations of hand-numbness. The ALJ noted that Soliz engaged in "conservative" pain treatment and "her pain medications work very well and provide relief" (A.R. 24), but this pain treatment was for Soliz's back and knee pain, not carpal tunnel syndrome. The ALJ simply didn't refer to any evidence

- 8 -

in the record related to Soliz's course of treatment for carpal tunnel syndrome.

The ALJ's second reason for rejecting Soliz's symptom testimony was that "the object[ive] records are not consistent" with Soliz's alleged limitations. (A.R. 25.) But the only medical records cited by the ALJ pertaining to Soliz's hands tend to confirm that she *does* have carpal tunnel syndrome. Thus, the ALJ erred because she failed to provide any reasons, supported by evidence, for rejecting Soliz's hand-numbness testimony.

This error only provides a basis for remand if it wasn't "harmless." *Molina*, 674 F.3d at 1115. Here, the error committed by the ALJ wasn't harmless, and thus provides a basis for remand. At step five, the ALJ determined Soliz could perform three occupations: (1) cleaner/housekeeper; (2) small parts assembler;[2] and (3) garment folder. (A.R. 29.) Each of these occupations requires significant use of the hands. *Cleaner, Housekeeping*, DOT 323.687-014, *available at* 1991 WL 672783 (requiring frequent reaching and handling and occasional fingering); *Assembler, Small Products II*, DOT 739.687-030, *available at* 1991 WL 680180 (requiring constant reaching, handling, and fingering); *Garment Folder*, DOT 789.687-066, *available at* 1991 WL 681266 (requiring constant reaching, handling, and fingering). If the ALJ credited as true Soliz's testimony about the numbness in her hands, the ALJ could have determined she couldn't perform some (or all) of those occupations. Thus, the ALJ's failure to provide specific, clear and convincing reasons for rejecting Soliz's carpal tunnel syndrome-related symptom testimony provides a basis for remand.

…

…

---

[2] Although the ALJ determined Soliz could perform the occupation of "small parts assembler," the ALJ cited the Dictionary of Occupational Titles ("DOT") number 209.587-034. (A.R. 29.) In fact, this DOT number refers to the position of "Marker," which is described in part as "Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article." *See* 1991 WL 671802. The Court assumes the ALJ determined Soliz could perform the occupation of "small parts assembler," with a DOT number of 739.687-030, because this occupation was explicitly referenced in a previous hearing by the vocational expert (A.R. 103).

- 9 -

III. Whether The ALJ Committed Reversible Error When Determining Soliz Could Perform Light Work

Soliz argues the ALJ erred in three ways when determining she could perform light work. First, Soliz contends the ALJ improperly rejected the medical opinion of her treating physician, Dr. Ehab Abdalah, M.D. (Doc. 12 at 14.) Second, Soliz asserts the ALJ shouldn't have determined she could perform light work in light of Soliz's symptom testimony regarding her leg pain. (*Id.* at 16.) Third, Soliz argues the ALJ erred by disregarding the lay witness testimony of Mary Bernardez and Pat Tapia. (*Id.* at 17.)

    A. **Whether The ALJ Improperly Rejected Dr. Abdalah's Opinion**

        *1. Dr. Abdalah's Opinion*

Dr. Abdalah, Soliz's treating physician, opined that Soliz doesn't have the ability to hold a job because of her "limited mobility and [lack of] strength to even perform the smallest task." (A.R. 27, citing A.R. 816.) He also opined that Soliz should "keep away from any strenuous work including light duty day to day task[s]." (A.R. 817.) Additionally, he opined that, in an eight-hour day, Soliz could sit fewer than two hours and stand and walk fewer than two hours. (A.R. 27, citing A.R. 828-35.)

        *2. Legal Standard*

Although "[t]he ALJ must consider all medical opinion evidence," *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), there is a hierarchy among the sources of medical opinions. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). *See also* 20 C.F.R. § 404.1527(c)(2)

("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

Given this hierarchy and a treating physician's position at the top if it, an ALJ may reject uncontroverted evidence from that source "only for 'clear and convincing' reasons." *Lester*, 81 F.3d at 830. Also, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* (citation omitted). Where "the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating physician may itself be substantial evidence." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An ALJ can satisfy this burden of providing specific and legitimate reasons "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir. 1989). *See also Embrey*, 849 F.2d at 421–22 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

*3. Analysis*

The ALJ gave Dr. Abdalah's opinions about Soliz's physical impairments "no significant weight." (A.R. 27.) The ALJ didn't identify any medical opinions, from other sources, that contradicted Dr. Abdalah's opinions. Thus, the ALJ was required to provide "clear and convincing" reasons—a higher threshold than "specific and legitimate" reasons—for discounting Dr. Abdalah's opinions. Although this question presents a close call, the Court concludes the ALJ met this burden.

The ALJ rejected Dr. Abdalah's opinions in part because his treatment notes contradicted those opinions. Specifically, although Dr. Abdalah opined that Soliz "no longer retains the ability to hold a job due to her 'limited mobility and strength to even perform the smallest task'" (A.R. 27, citing A.R. 816), Dr. Abdalah's "treatment notes reveal normal strength, bulk, tone in muscles, and sensation" (A.R. 27, citing A.R. 860). "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician . . . ." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

### B. Whether The ALJ Improperly Discounted Soliz's Testimony About Her Leg Pain

#### *1. The ALJ's Decision*

Although the ALJ's decision isn't a model of clarity, the Court discerns five reasons why the ALJ discounted Soliz's pain testimony: (1) earlier statements by Soliz contradict her contention that her impairments prevent her from working; (2) Soliz's "treatment for pain has been conservative"; (3) medical records demonstrate that Soliz's treatment for pain improved her pain levels; (4) Soliz's testimony "seems so extreme, as to appear implausible"; and (5) the objective medical evidence isn't consistent with the degree of pain Soliz alleges she experienced. (A.R. 23-25.)

#### *2. Analysis*

Soliz argues the ALJ's reasons for discounting her symptom testimony regarding her leg pain weren't sufficient. (Doc. 12 at 15-16.) As noted above, to reject a claimant's symptom testimony, the ALJ must first determine whether there's "objective medical evidence which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (citation omitted). The ALJ determined that objective medical evidence could produce the pain of which Soliz complained. (A.R. 23.) Thus, the ALJ was obligated to provide "specific, clear and convincing reasons" for rejecting Soliz's symptom testimony. The Court concludes the ALJ met this standard.

The ALJ stated that although Soliz "alleged that her doctors told her to stop working," "the record reflects that [Soliz] stopped working due to a business related lay off." (A.R. 23.) This was a specific, clear and convincing reason to reject Soliz's symptom testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) ("[T]he ALJ stated that she found Bruton's subjective pain complaints not credible because, *inter alia* . . . Bruton stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was injured . . . . These are sufficient reasons for disregarding pain testimony . . . ."). Notably, in her reply brief, Soliz didn't attempt to rebut the Commissioner's argument that the ALJ's rejection of her symptom testimony was permissible under *Bruton* (Doc. 14 at 5)—instead, Soliz merely argued that, "[e]ven if the ALJ gave valid reasons for rejecting . . . Plaintiff's allegations, this does not mean that her RFC assessment is supported." (Doc. 15 at 6.)

The ALJ also cited numerous medical records that seem to reflect a lower level of pain than Soliz testified she was enduring. (A.R. 24-25.) The ALJ explained that "the object[ive] records are not consistent [with] the extreme limitations as asserted by the claimant." (A.R. 25.) For example, the ALJ noted records where the objective medical evidence showed that Soliz's back issues were "mild" or "moderate." (*See, e.g.*, A.R. 24 ["An x-ray of her spine in 2014 revealed only mild degenerative disc disease."]; *id.* ["An MRI done in August 2014 showed . . . mild to moderate central spinal stenosis and mild to moderate bilateral forminal narrowing . . . ."] *id.* ["An x-ray of the claimant's lumbar spine done in September 2015 showed only mild diffuse degenerative changes . . . ."].) The Court agrees this objective medical evidence isn't consistent with the amount of pain Soliz was claiming to feel. This provided an additional specific, clear and convincing reason for the ALJ to reject Soliz's symptom testimony.

…

…

…

…

C. **Whether The ALJ Improperly Rejected The Testimony Of Soliz's Lay Witnesses**

*1. The Lay Testimony*

Two lay witnesses submitted statements or testified on behalf of Soliz. Mary Bernardez, Soliz's friend, opined that Soliz can't stand, sit, or walk at a steady pace for more than 1-2 hours before having to lay down. (A.R. 1020.) Bernardez also claimed Soliz "cannot stand for a long period of time without having to sit down and lay down." (A.R. 1021.) Further, she stated that Soliz "is unable to use her hands" and "cannot make a fist." (*Id.*) Patricia Tapia, Soliz's sister, reported that Soliz couldn't sit or stand for long periods of time without experiencing pain. (A.R. 1015-1016.)

*2. Analysis*

Soliz argues the ALJ improperly disregarded the testimony of her two lay witnesses. (Doc. 12 at 17.) The ALJ gave both opinions "little weight" because "they are lay opinions based on casual observation, rather than objective medical [evidence] and testing." (A.R. 27-28.) Furthermore, the ALJ explained "they are unpersuasive for the same reasons that the claimant's own allegations do not fully persuade the undersigned, observing that they lack substantial support from objective findings in the record." (*Id.*)

"[A]n ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citations omitted). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness,'" and these reasons must be specific. *Id.* (citations omitted).

The ALJ erred by rejecting the lay testimony of Bernardez and Tapia. The ALJ first rejected the opinions because they are "lay opinions based on casual observation." (A.R. 27-28.) But it's not permissible to reject lay testimony *because* it's lay testimony. Lay testimony "is competent evidence" that must be considered. *Bruce*, 557 F.3d at 1115 (citation omitted).

The ALJ also rejected the lay testimony "for the same reasons that the claimant's own allegations do not fully persuade the undersigned." (A.R. 28.) Although the Court

has concluded the ALJ didn't err by rejecting *Soliz's* symptom testimony—because Soliz provided contradictory and incredible testimony concerning medical advice she had supposedly received from a doctor and the objective medical evidence didn't support the degree of pain Soliz claimed to be suffering—these rationales don't, standing alone, justify the rejection of Bernardez's and Tapia's testimony concerning *their* personal observations of Soliz. Thus, the Court must evaluate the sufficiency of the other reasons that the ALJ provided for rejecting Soliz's symptom testimony (which the ALJ incorporated by reference in support of the decision to reject Bernardez's and Tapia's testimony).

The second reason provided by the ALJ for discounting Soliz's testimony was that Soliz had only engaged in "conservative" treatments. (A.R. 24.) "A conservative course of treatment may discredit a claimant's allegations of disabling symptoms." *O'Connor v. Berryhill*, 355 F. Supp. 3d 972, 985 (W.D. Wash. 2019). Here, however, it's unclear what about Soliz's treatment was "conservative." The ALJ recognized that Soliz was given epidural injections and opioids to manage her pain. (A.R. 24.) Neither of these treatment courses appears to be "conservative." *Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."); *O'Connor*, 355 F. Supp. 3d at 985 ("[P]ain treatment with opioid analgesics generally is not considered conservative."). Furthermore, the ALJ didn't provide any explanation for why she characterized those treatments to be a "conservative" response to the pain allegedly suffered by Soliz. *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (finding the ALJ erred by rejecting claimant's symptom testimony where "[t]he ALJ provided no explanation why he deemed th[e] treatment 'conservative' for [the ailment at issue]").

The third reason provided by the ALJ for discounting Soliz's testimony was that certain treatments had improved Soliz's pain symptoms. (A.R. 24 ["The claimant's treatment for pain has . . . controlled her symptoms . . . ."]; *id.* ["The record shows that her pain medications work very well and provide relief."]; *id.* ["The claimant has reported that she gets pain relief with applying heat and medication."]; *id.* ["The claimant also reported

pain relief with a series of epidural injections in 2015."].) On the one hand, it's true that the records cited by the ALJ demonstrate that treatment diminished Soliz's pain levels. But some improvements are to be expected from treatment, and the ALJ didn't explain *why* the diminished pain levels reflected in the medical records were inconsistent with the "severe" pain Soliz allegedly endured. Although some of the records cited by the ALJ indicate more than minimal improvement from treatment (*see, e.g.*, A.R. 877 ["pain is a 4 [and] medication is working very well"]), other records cited by the ALJ suggest that Soliz continued to experience significant pain even after having some improvement from treatment (*see, e.g.,* A.R. 667 [noting "pain meds does help," yet also documenting Soliz's pain level as "8/10"]; A.R. 867 [stating "[m]edications are helping her with the pain" but documenting a "9" on the pain scale]). Because the ALJ didn't explain why the improvements documented in the medical records undermined Soliz's testimony about the extent of her pain, the ALJ's citation to those records wasn't a valid basis for rejecting Soliz's testimony.

The fourth reason provided by the ALJ for discounting Soliz's testimony was that her "allegation of the complete inability to function seems so extreme, as to appear implausible." (A.R. 24.) In support of this reason, the ALJ cited Exhibit 6E/2. Exhibit 6E/2, however, isn't a valid record citation—Exhibit 6E is only one page long. (A.R. 404.) Thus, it's not clear why the ALJ determined that Soliz's testimony about her ability to function "appear[s] implausible."

Finally, as explained previously, the ALJ cited numerous medical records suggesting Soliz was suffering from less pain than she claimed. (A.R. 24-25.) The Court agrees this was a specific, clear and convincing reason for rejecting *Soliz's* pain testimony. However, an ALJ can't discredit *lay* testimony merely because it isn't supported by medical evidence in the record. *Bruce*, 557 F.3d at 1116 ("Nor under our law could the ALJ discredit her lay testimony as not supported by medical evidence in the record."); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The rejection of the testimony of Smolen's family members because Smolen's medical records did not corroborate her

fatigue and pain violates SSR 88–13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her medical records.").

In sum, the only valid reasons the ALJ identified for rejecting Soliz's symptom testimony were that (1) Soliz provided incredible testimony about being told by a doctor to "stop" working due to her pain, when there was evidence that Soliz had actually been laid off for business-related reasons, and (2) the objective medical records weren't completely consistent with Soliz's testimony.  Although the ALJ was entitled to reject Soliz's testimony for these reasons, the ALJ couldn't simply cross-reference these reasons as the basis for rejecting Bernardez's and Tapia's testimony.  Those witnesses' testimony, after all, was based on their own personal observations of Soliz.

    D.    **Harmlessness Review**

If the ALJ had credited as true Bernardez and Tapia's lay testimony, the ALJ couldn't have determined that Soliz could perform the occupations of cleaner/housekeeper, small parts assembler, or garment folder.  Thus, the ALJ's error in rejecting their testimony wasn't harmless.

IV.    <u>Scope of Remand</u>

Soliz doesn't request a remand for a calculation of benefits.  Instead, she asks the Court to vacate the ALJ's decision and remand the matter so the ALJ can "consider the evidence" the ALJ improperly rejected. (Doc. 12 at 18.)

Accordingly, **IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated**, and this case is **remanded** for further proceedings consistent with this opinion.  The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 30th day of August, 2019.

_____
Dominic W. Lanza
United States District Judge